1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8
9

10

CHRISTINA SALAZAR,

11

Plaintiff,

12

v.

13

CAROLYN W COLVIN, Acting
Commissioner of Social Security,

14

Defendant.

15

CASE NO. 3:16-CV-05445-DWC

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

16    Plaintiff Christina Salazar filed this action, pursuant to 42 U.S.C. § 405(g), for judicial

17  review of Defendant's denial of Plaintiff's application for disability insurance benefits ("DIB").

18  Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the

19  parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt.

20  6.

21    After considering the record, the Court concludes the Administrative Law Judge ("ALJ")

22  erred when she failed to properly consider Plaintiff's migraine headaches at Step Three of the

23  sequential evaluation process. Had the ALJ properly considered Plaintiff's migraines at Step

24  Three, she may have found Plaintiff's impairments equaled a Listing. The ALJ's error is

1  therefore harmful, and this matter is reversed and remanded pursuant to sentence four of 42

2  U.S.C. § 405(g) to the Acting Commissioner of Social Security ("Commissioner") for further

3  proceedings.

<u>FACTUAL AND PROCEDURAL HISTORY</u>

5         On November 4, 2011, Plaintiff filed an application for DIB, alleging disability as of

6  February 9, 2010. *See* Dkt. 9, Administrative Record ("AR") 675. The application was denied

7  upon initial administrative review and on reconsideration. *See* AR 77-104, 20. On January 11,

8  2013, a hearing was held before ALJ Cynthia Rosa. AR 37-72. At the hearing, Plaintiff amended

9  her alleged onset date to November 15, 2011. AR 168-69. The ALJ found Plaintiff not disabled.

10  AR 20-32. The Appeals Council denied Plaintiff's administrative appeal, making the ALJ's

11  opinion the final decision of the Commissioner. *See* AR 1-6. Plaintiff appealed to the United

12  States District Court for the Western District of Washington, which remanded the case for

13  further proceedings. *See* AR 790-94; *Salazar v. Colvin*, 3:14-CV-05460-RJB (W.D. Wash., Nov.

14  11, 2014).

15         On remand, Plaintiff received a second hearing before ALJ Rosa. AR 698-733. In a

16  March 31, 2016 decision, ALJ Rosa again found Plaintiff not disabled. AR 675-89. Plaintiff did

17  not file written exceptions with the Appeals Council, making the ALJ's March 31, 2016 decision

18  the final decision of the Commissioner. *See* AR 673. Plaintiff now appeals the ALJ's March 31,

19  2016 decision.[1]

20         In Plaintiff's Opening Brief, Plaintiff maintains the ALJ erred when she failed to: (1) find

21  Plaintiff's migraines and other impairments equal Listing 11.03; (2) provide specific and

22  legitimate reasons for rejecting the opinions of Drs. Blackburn and Lemberg; (3) provide clear

23  ─────────────────

24  [1] When stating "the ALJ's decision" throughout this Report and Recommendation, the Court is referring to the ALJ's March 31, 2016 decision.

and convincing reasons for rejecting Plaintiff's testimony; and (4) meet the burden of showing there were other jobs in the national economy Plaintiff could perform. Dkt. 11, p. 1.

STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

DISCUSSION

**I.     Whether the ALJ erred by failing to find Plaintiff's migraines equaled Listing 11.03.**

Plaintiff argues the ALJ erred by failing to find Plaintiff's migraines equaled Listing 11.03. Dkt. 11, pp. 16-17. At Step Three of the sequential evaluation process, the ALJ considers whether one or more of the claimant's impairments meets or equals an impairment listed in Appendix 1 to Subpart P of the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). Each Listing sets forth the "symptoms, signs, and laboratory findings" which must be established in order for a claimant's impairment to meet the Listing. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). If a claimant meets or equals a Listing, the claimant is considered disabled without further inquiry. *See* 20 C.F.R. § 416.920(d).

The burden of proof is on the claimant to establish she meets or equals any of the impairments in the Listings. *See Tackett*, 180 F.3d at 1098. "A generalized assertion of functional problems," however, "is not enough to establish disability at step three." *Id.* at 1100 (citing 20 C.F.R. § 404.1526). A mental or physical impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508. It must be established by

medical evidence "consisting of signs, symptoms, and laboratory findings." *Id.; see also* Social

Security Ruling ("SSR") 96–8p, 1996 WL 374184 *2 (a step three determination must be made

on basis of medical factors alone). An impairment meets a listed impairment "only when it

manifests the specific findings described in the set of medical criteria for that listed impairment."

SSR 83–19, 1983 WL 31248 *2. The ALJ "is not required to discuss the combined effects of a

claimant's impairments or compare them to any listing in an equivalency determination, unless

the claimant presents evidence in an effort to establish equivalence." *Burch v. Barnhart,* 400

F.3d 676, 683 (9th Cir. 2005).

The parties do not dispute Listing 11.03[2] is the applicable Listing for migraine

headaches. *See* Dkt. 11, 15. The Social Security Administration states a claimant's impairment of

chronic migraines medically equals Listing 11.03 when:

> A claimant has chronic migraine headaches for which she sees her treating doctor on a regular basis. Her symptoms include aura, alteration of awareness, and intense headache with throbbing and severe pain. She has nausea and photophobia and must lie down in a dark and quiet room for relief. Her headaches last anywhere from 4 to 72 hours and occur at least 2 times or more weekly. Due to all of her symptoms, she has difficulty performing her ADLs. The claimant takes medication as her doctor prescribes.

POMS DI 24505.015(B)(7)(b). [3]

---

[2] Listing 11.03 states:
Epilepsy-nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.
20 C.F.R., Pt. 404, Subpt. P, App. 1, § 11.03.
[3] The POMS, or Program Office Manual System, "does not have the force of law," but is deemed to be "persuasive authority" in the Ninth Circuit. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1005 (9th Cir. 2006).

1    Here, the ALJ found Plaintiff had the following severe impairments: migraine headaches,

2    obesity, major depressive disorder, anxiety disorder, fibromyalgia, osteoarthritis of the bilateral

3    knees, mild C6-C7 cervical stenosis, degenerative changes of the lumbar spine, and stress injury

4    of the left hip. AR 677. At Step Three, the ALJ determined, "[t]hrough the date last insured,

5    [Plaintiff] did not have an impairment or combination of impairments that met or medically

6    equaled the severity of the listed impairments[.]" AR 678. The ALJ specifically found Plaintiff's

7    physical impairments did not meet Listings 1.02 and 1.04, which addressed Plaintiff's joint

8    dysfunction and spinal impairments. AR 678. The ALJ did not discuss whether Plaintiff's

9    migraine headaches equaled a Listing. *See* AR 678-80.

10    During the second ALJ hearing, Plaintiff's attorney argued Plaintiff equaled Listing

11    11.03 due to her migraine headaches. AR 702. To meet her burden under the Listings, Plaintiff

12    also presented evidence to establish "medical equivalence." For example, the medical records

13    show Plaintiff was diagnosed with chronic migraines in 2008 or early 2009. AR 1395. In

14    December 2011, Plaintiff was on prescription medications for migraines. AR 386-87. AR 1395.

15    She reported having headaches 4-5 days per week in August of 2012, while on prescription

16    medications. AR 1395. Plaintiff reported visual phenomena with some of her migraines. AR

17    1395.

18    In 2012, to address her migraines Plaintiff received nerve blocks with epidural steroids.

19    AR 1410. She reported the headaches were occurring a couple of times per week. AR 1410.

20    Plaintiff received occipital blocks in December of 2012 and, on January 23, 2013, reported 5

21    days of headache relief from the injection. AR 1421-22. On December 12, 2014, Plaintiff's

22    treating neurologist, Dr. Dale Overfield, noted Plaintiff's migraines are occurring 20-25 days per

23

24

month and Topamax, beta blockers, calcium channel blockers, and tricyclic antidepressants had failed. AR 1433.

Plaintiff testified when she has a migraine she stays in bed with a blanket over her head. *See* AR 56-57. The migraines cause nausea and vomiting. AR 57. Plaintiff testified the medications provided no control for her migraines in 2013. AR 711. When she has a migraine, it will last 2-3 days and sounds are amplified. AR 712.

Plaintiff presented evidence to establish her migraines equaled Listing 11.03. The ALJ's decision provides no reference to whether the ALJ considered the evidence in reference to whether the evidence meets Listing 11.03 at Step Three. Therefore, the ALJ erred. *See Edwards v. Colvin*, 2014 WL 7156846, *3 (W.D. Wash. Dec. 15, 2014) (finding the ALJ erred when she considered the plaintiff's migraines in relation to the Listings overall, but did not discuss Listing 11.03); *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001) (a "boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not" meet or equal a listed impairment).

"[H]armless error principles apply in the Social Security context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless, however, only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Commissioner, Social Security Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see Molina*, 674 F.3d at 1115. The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118-1119 (*quoting Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)).

The evidence shows Plaintiff saw her treating doctors consistently for her migraines. Her symptoms include intense pain, nausea, vomiting, and photophobia. She has to stay in a dark,

1  quiet room for relief. Further, Plaintiff reported visual phenomena with some of her migraines.

2  Plaintiff's migraines can last two to three days and she is unable to leave her room when she has

3  a migraine. While Plaintiff received some relief from her migraines after occipital injections, she

4  still has migraines. Had the ALJ properly considered Plaintiff's migraines at Step Three, there is

5  a reasonable possibility the ALJ would have found Plaintiff's migraines medically equaled

6  Listing 11.03. Accordingly, the Court finds the ALJ's failure to consider Listing 11.03 at Step

7  Three is harmful error.[4]

8  **II.    Whether the ALJ erred in assessing the medical opinion evidence and
            Plaintiff's testimony.**

9

10  The ALJ's error at Step Three requires remand to the Commissioner to properly consider

11  whether Plaintiff's migraines equal Listing 11.03. As the ALJ's re-evaluation of the evidence at

12  Step Three may impact all aspects of the ALJ's decision, the ALJ is instructed to re-evaluate this

13  entire matter on remand, completing each step of the sequential evaluation process. The Court

14  also finds the ALJ erred in her consideration of: (1) Dr. Darin Blackburn's opinion; (2) Dr. Mary

15  Lemberg's opinion; and (3) Plaintiff's testimony. These errors, discussed below, must be

16  corrected on remand.

17  A.  Dr. Blackburn

18  Plaintiff's treating physician, Dr. Darin Blackburn, completed a Physical Medical Source

19  Statement on January 7, 2013. AR 626-29. Dr. Blackburn opined Plaintiff's fibromyalgia,

20  hypertension, and common migraines caused functional limitations. AR 626-29. The ALJ gave

---

21  [4] Defendant argues the ALJ implicitly considered Listing 11.03 while assessing Plaintiff's residual

22  functional capacity ("RFC"). Dkt. 15. When discounting Plaintiff's testimony, the ALJ found Plaintiff's migraines had improvement with treatment and were not occurring daily. *See* AR 682. The ALJ's decision provides no indication the ALJ considered Listing 11.03 when assessing Plaintiff's RFC. Further, simply because Plaintiff received relief from her migraines does not mean the migraines did not equal Listing 11.03. The evidence shows

23  Plaintiff was still having migraines after treatment; they were just not as severe. The evidence also shows Plaintiff's migraines were occurring a couple times per week when treatment was successful, which is consistent with Listing

24  11.03. Therefore, the Court is not persuaded by Defendant's argument.

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 7

1  little weight to Dr. Blackburn's opinion and found: (1) Dr. Blackburn's opinion does not match

2  information found in his treatment records; (2) medical examinations from other sources found

3  Plaintiff "with normal gait, station, reflexes, and tandem walk, and were negative for any

4  findings of joint pain, swelling, effusion, or muscle weakness;" (3) Plaintiff could perform a

5  range of daily activities requiring greater functioning than described by Dr. Blackburn; and (4)

6  Plaintiff described positive therapeutic response. AR 686.

7        First, the ALJ gave little weight to Dr. Blackburn's opinion because some of Dr.

8  Blackburn's treatment records state Plaintiff was not in acute distress and her fibromyalgia was

9  "stable." AR 686. The ALJ also noted Dr. Blackburn's treatment records showed Plaintiff had

10  only 9 of 18 trigger points during fibromyalgia testing on one occasion. AR 686.[5] The ALJ failed

11  to explain how Dr. Blackburn's treatment records are inconsistent with his opinion. *See* AR 686.

12  Further, the record citations provided by the ALJ fail to show Dr. Blackburn's opinion is

13  inconsistent with his treatment records. For example, the treatment records show Plaintiff was

14  not in acute distress, but note Plaintiff was still suffering from headaches and back, knee and hip

15  pain, and, while her fibromyalgia was noted to be "stable", it was still causing moderate diffuse

16  pain with medication. *See* AR 1162, 1209-10, 1314, 1327-28, 1331-32, 1351-52. Accordingly,

17  the first reason for giving little weight to Dr. Blackburn's opinion is not a specific and legitimate

18  and supported by substantial evidence.

19        Second, the ALJ found the medical examinations from other sources showed Plaintiff had

20  normal gait, station, reflexes, and tandem walk, and did not have joint pain, swelling, effusion, or

21  muscle weakness. AR 686. The ALJ failed to explain how these record citations contradict Dr.

22  Blackburn's opinion regarding functional limitations caused by Plaintiff's fibromyalgia,

23

24     [5] Trigger/tender points are pain points used to diagnose fibromyalgia. A finding of at least 11 of 18 positive trigger/tender points is one factor necessary to show a severe impairment of fibromyalgia. *See* SSR 12-2p.

migraines, and hypertension. *See e.g. Rollins v. Massanari*, 261 F.3 853, 855 (9th Cir. 2001) (fibromyalgia symptoms include pain all over, fatigue, disturbed sleep, stiffness, and multiple tender points (citations omitted)); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) ("Since swelling of the joints is not a symptom of fibromyalgia, its absence is no more indicative that the patient's fibromyalgia is not disabling than the absence of headache is an indication that a patient's prostate cancer is not advanced."). Furthermore, the ALJ failed to explain why Dr. Blackburn's physical examinations, objective testing, and subjective interpretations were entitled to less weight than the medical examinations completed by "other sources." *See* AR 686; *Lester*, 81 F.3d at 832-33; *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014) (an ALJ errs when he rejects a medical opinion or assigns it little weight when asserting without explanation another medical opinion is more persuasive). Therefore, the second reason for giving little weight to Dr. Blackburn's opinion is not specific and legitimate and supported by substantial evidence.

Third, the ALJ found Plaintiff's daily activities require greater functional abilities than described by Dr. Blackburn. AR 686. Specifically, the ALJ stated Plaintiff's activities included "caring for her disabled husband and minor son, caring for the minor child of a friend, helping a friend clean house, doing her own household chores, and walking regularly for exercise." AR 686. The records cited by the ALJ, however, fail to support her finding. For example, the cited records show Plaintiff does some household chores, took a friend's child with her to one doctor's appointment, cooked dinner (resulting in chest pain and a trip to the emergency room), helped a friend clean her house on one occasion, visited her husband while he was in the hospital, took care of her husband for six months,[6] and walks for 20-30 minutes 3-4 times per week. *See* AR 686, 405, 408, 1053, 1158, 1529, 1542, 1561, 1593. The Court finds Plaintiff's activities of daily

---

[6] The record citation does not show the type of care Plaintiff provided to her husband for the six months following his release from the hospital. *See* AR 1561.

1   living, as identified by the ALJ, contradict the ALJ's finding that Plaintiff's daily activities

2   require greater functional abilities than described by Dr. Blackburn . Therefore, this is not a valid

3   reason to give little weight to Dr. Blackburn's opinion.

4         Fourth, in discussing the weight given to Dr. Blackburn's opinion, the ALJ noted Plaintiff

5   received positive therapeutic response and reduction in pain symptoms with conservative

6   treatment. AR 686. The ALJ does not explain why Plaintiff's reduction in pain symptoms

7   warrants giving little weight to Dr. Blackburn's opinion. *See* AR 686. Further, it is unclear how

8   the records cited by the ALJ are inconsistent with Dr. Blackburn's opinion. *See* AR 686, 1063

9   (no relief from lumbar facet blocks, occipital blocks helped in reducing pain), 1292 (able to

10  function more with occipital nerve block, still having significant headaches), 1529 (steroid

11  injection provided 60% relief for a few days), 1572 (occipital nerve block provided 3-4 months

12  of relief of headache pain after Plaintiff's date last insured). Accordingly, Plaintiff's positive

13  therapeutic response as asserted by the ALJ is not a sufficient reason for giving little weight to

14  Dr. Blackburn's opinion.

15        For the above stated reasons, the ALJ failed to provide specific and legitimate reasons

16  supported by substantial evidence for giving little weight to Dr. Blackburn's opinion.

17        B.  Dr. Lemberg

18        Examining psychiatrist Dr. Mary Lemberg completed a mental status examination and a

19  Comprehensive Psychiatric Evaluation of Plaintiff on February 7, 2012. AR 359-64. Dr.

20  Lemberg diagnosed Plaintiff with major depressive disorder, severe, single episode, with

21  psychotic features and anxiety disorder, not otherwise specified. AR 363. Dr. Lemberg provided

22  functional limitations based on her examination of Plaintiff and Plaintiff's history. The ALJ gave

23  little weight to Dr. Lemberg's opinion and found: (1) Plaintiff's daily activities do not match Dr.

24

1    Lemberg's opinion; (2) longitudinal treatment records report Plaintiff being alert and oriented,

2    and having an appropriate mood and affect; (3) Plaintiff's depressive symptoms are well

3    controlled on Wellbutrin; and (4) Plaintiff does not endorse difficulties getting along with

4    supervisors or authority figures. AR 685.[7]

5       First, the ALJ found Dr. Lemberg's opinion "does not match" Plaintiff's ability to care

6    for her minor child and friend's child, attend her own medical appointments, take her son to

7    school, go on walks for exercise, and visit her husband in the hospital. AR 685. The ALJ failed

8    to explain how Plaintiff's activities are inconsistent with Dr. Lemberg's opinion regarding

9    functional limitations caused by Plaintiff's depression and anxiety. *See* AR 685. Further, the

10   record shows Plaintiff's activities are limited. Plaintiff drove her son to school five days a week,

11   did housework once a week with her husband's help, shopped for groceries once or twice per

12   month, and took a friend's child with her to one doctor's appointment. *See* AR 46, 240-41, 408,

13   1542. Plaintiff does some cooking and laundry, reads, and sleeps. *See* AR 46, 240-41, 1542. The

14   Court finds the ALJ failed to show Plaintiff's activities of daily living do not "match" Dr.

15   Lemberg's opinion. Therefore, this is not a specific and legitimate reason supported by

16   substantial evidence for giving little weight to Dr. Lemberg's opinion.

17       Second, the ALJ found the longitudinal treatment records "consistently report the

18   claimant being alert and oriented, and having an appropriate mood and affect." AR 685. The ALJ

19   failed to explain how the cited treatment records are inconsistent with Dr. Lemberg's opinion.

20   The treatment records cited by the ALJ reflect Plaintiff's mental health status when she was

21

22

23

24

---

[7] The ALJ also states Dr. Lemberg's opinion is based on Plaintiff's subjective complaints. AR 685. It is unclear if the ALJ is providing this as a reason to give little weight to Dr. Lemberg's opinion. The Court notes Dr. Lemberg completed a mental status examination ("MSE") and relied on the MSE to reach her opinion. Therefore, Dr. Lemberg's opinion is not based solely on Plaintiff's subjective complaints and this is not a valid reason for giving little weight to the opinion.

1    treated for physical ailments. *See* AR 1054 (treatment for chest pain –neurological: alert and

2    oriented, psychiatric: mood and affect appropriate); 1057 (emergency room –Plaintiff remains

3    awake and alert); 1058 (emergency room –"awake, alert, oriented x3"); 1066 (treatment for

4    headaches and back pain –"alert and oriented"); 1449 (treatment for respiratory infection –

5    judgment was intact, oriented to time, place, and person, and had no appearance of anxiety,

6    depression, or agitation); 1537 (treatment for nausea –alert, oriented x3). The ALJ failed to

7    support her finding with treatment records from when Plaintiff was treated for mental health

8    impairments. Therefore, the Court finds the ALJ's second reason for giving little weight to Dr.

9    Lemberg's opinion is not specific and legitimate and supported by substantial evidence.

10          Third, when discussing Dr. Lemberg's opinion, the ALJ noted Plaintiff's "depressive

11    symptoms were well controlled with Wellbutrin." AR 685. It is unclear if the ALJ gave little

12    weight to Dr. Lemberg's opinion because Plaintiff was on Wellbutrin or whether the ALJ

13    impermissibly "cherry-picked" the treatment record to support her conclusion. *See Ghanim v.*

14    *Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014). To support finding Plaintiff's depressive symptoms

15    were well controlled, the ALJ cited to a single medical record which states Plaintiff's depression

16    symptoms were "controlled on Wellbutrin, but not with anxiety as well." AR 1175. The record

17    shows Plaintiff reported the Wellbutrin was working well for depression, but she had increased

18    anxiety, was irritable, and not sleeping well. AR 1175. The Court finds the ALJ's assertion that

19    Plaintiff's depressive symptoms were "well controlled" with medication is not supported by the

20    record. Accordingly, this is not a legitimate reason to give little weight to Dr. Lemberg's

21    opinion.

22          Fourth, the ALJ noted Plaintiff did not endorse any past or present difficulty getting

23    along with supervisors or other authority figures. AR 685. Dr. Lemberg opined Plaintiff may

24

1   have difficulty attending to instructions from supervisors. AR 364. The ALJ did not adequately

2   explain why Plaintiff's failure to endorse a history of difficulty getting along with supervisors is

3   inconsistent with Dr. Lemberg's opinion that Plaintiff does have such difficult. Accordingly, this

4   is not specific and legitimate reason for giving little weight to Dr. Lemberg's opinion.

5          For the above stated reasons, the Court finds the ALJ failed to provide specific and

6   legitimate reasons supported by substantial evidence for giving little weight to Dr. Lemberg's

7   opinion.

8          C.   Plaintiff's Testimony

9          At the ALJ hearings, Plaintiff testified she drove her son to school every day, helped with

10  cooking, and performed chores when she was able. AR 44, 46-47. Plaintiff stated she has good

11  days and bad days, and when she has a bad day she stays in her room in the dark. AR 56-57.

12  Plaintiff has three to four bad days per week. AR 56, 707-08. On a good day, Plaintiff can walk

13  20 minutes. AR 60. Plaintiff testified the nerve blocks provide her with a month to a month and a

14  half of headache relief; she still has migraines, they just are not as severe. AR 711. The ALJ

15  discounted Plaintiff's testimony because: (1) Plaintiff's subjective statements are inconsistent

16  with her activities of daily living; (2) Plaintiff reported positive therapeutic responses to

17  conservative treatments; and (3) the medical records are inconsistent with Plaintiff's testimony.

18  *See* AR 681-83.

19         First, the ALJ determined Plaintiff's activities of daily living are inconsistent with her

20  subjective complaints of pain. AR 681-82. The record shows Plaintiff drove her son to school

21  five days a week, attempted to do household chores, and helped a friend with house cleaning on

22  one occasion. *See* AR 240-41, 1542. She testified she did housework once a week with her

23  husband's help. AR 705. Plaintiff does some cooking and laundry, reads, and sleeps. *See* AR 46,

24

240-41, 1542. She shops for groceries once or twice per month with her husband. AR 46. Plaintiff also walks 3-4 times per week for 20-30 minutes. AR 1593. While she put her treatment on hold for six months to care for her sick husband, the record does not indicate how she cared for him. AR 1561. Plaintiff's husband now has a state-paid caregiver. AR 707. In 2011, a treatment record notes Plaintiff was "constantly active," AR 311,which Plaintiff states is because she told her doctor she could walk a block and do some housework. AR 705.

A review of the records cited by the ALJ shows Plaintiff's activities of daily living are limited and not inconsistent with Plaintiff's subjective complaints. Substantial evidence does not support finding Plaintiff engages in activities of daily living for more than a few hours per day on a "good day." Therefore, the ALJ has not shown Plaintiff's activities of daily living are inconsistent with her testimony of disabling impairments. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (recognizing "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations"). Accordingly, the ALJ's decision to find Plaintiff's symptom testimony inconsistent with her daily activities is not supported by substantial evidence.

Second, the ALJ found Plaintiff's statements that she received minimal therapeutic benefit from her treatment are contradicted by the record. The ALJ found Plaintiff's testimony was inconsistent with treatment records showing Plaintiff received 70-80% relief from migraines for up to 4 month periods following occipital steroid injections. AR 682. The record citations provided by the ALJ, however, contradict her finding. *See* AR 1052 (occipital nerve block provided 3 days and 5 days of relief); 1056 (occipital blocks provided 5 days relief); 1523 (70-80% overall relief from steroid injection –now only taking 3 hydrocodone per day); 1524 (had headache every day for past 2 weeks, severity is 40% better); 1545 (injections reduced headaches

1   to 2-3 per week, still has headaches on Imitrex); 1593 (received repeat left greater occipital nerve

2   blocks, which were "helpful in aborting her severe headache episodes that have to be refractory

3   to the Imitrex").

4        The ALJ also found Plaintiff had a positive therapeutic response to Topamax and was no

5   longer having daily migraine episodes. AR 683. The record cited by the ALJ states Plaintiff was

6   on Topamax for two weeks and reported she felt she was not having a headache everyday like

7   before the Topamax. AR 346, 682. However, medical records show Topamax stopped helping

8   and Plaintiff was having 4-5 headaches per week while on Topamax. AR 1395, 1433.

9   Additionally, the ALJ found the treatment notes showed Plaintiff endorsed up to 50% relief of

10  her low back pain symptoms with medial branch blocks. AR 682. The ALJ cited to a treatment

11  record which states Plaintiff had 20-50% relief for 2 days with the medial branch block. AR

12  1292. The ALJ fails to explain how two days of relief from the medial branch block is

13  inconsistent with Plaintiff's testimony. The ALJ failed to provide evidence showing Plaintiff's

14  statements regarding her lack of success with therapeutic treatment is inconsistent with the

15  medical records. Accordingly, the Court finds the ALJ's second reason for giving less weight to

16  Plaintiff's testimony is not clear and convincing and supported by substantial evidence.

17       Third, the ALJ relied on medical records to conclude Plaintiff's testimony was not

18  consistent with the record. AR 682-83. The ALJ reiterated the medical evidence, but failed to

19  show how the medical records were inconsistent with Plaintiff's testimony. For example, the

20  ALJ noted Plaintiff had 9, 11, 12, and 13 of 18 tender points at various times when tested for

21  fibromyalgia. AR 682. The ALJ found Plaintiff's complaints of fibromyalgia to be less severe

22  than her testimony because one testing result was below the diagnostic requirement. *See* AR 682.

23  The ALJ also noted Dr. Blackburn's records show Plaintiff's fibromyalgia was "stable;"

24

1   however, the evidence shows Plaintiff was still having moderate diffuse pain while "stable." *See*

2   AR 1328. The Court finds the ALJ did not adequately explain how the medical records are

3   inconsistent with Plaintiff's complaints of disabling impairments. Therefore, the ALJ's third

4   reason for discounting Plaintiff's testimony is not clear and convincing and supported by

5   substantial evidence.

6          For the above state reasons, the Court concludes the ALJ erred in discounting Plaintiff's

7   subjective symptom testimony.

8          D.  Conclusion

9          When considering the opinions of Drs. Blackburn and Lemberg and Plaintiff's testimony,

10  the ALJ failed to adequately explain her findings and support her findings with substantial

11  evidence. If the ALJ had properly considered this evidence, the residual functional capacity

12  ("RFC") may have included additional limitations.  Therefore, the errors are harmful. On

13  remand, the ALJ must correct the above stated errors when completing the sequential evaluation

14  process.

15  **III.    Whether the ALJ failed to meet her burden at Step Five.**

16         Plaintiff asserts the ALJ failed to meet her burden at Step Five. Dkt. 11. The Court

17  concludes the ALJ committed harmful error at Step Three and in assessing the medical opinion

18  evidence and Plaintiff's testimony. *See* Section I, II, *supra*. The ALJ must therefore reassess the

19  RFC on remand. *See* Social Security Ruling 96-8p ("The RFC assessment must always consider

20  and address medical source opinions."); *Valentine v. Commissioner Social Sec. Admin.*, 574 F.3d

21  685, 690 ("an RFC that fails to take into account a claimant's limitations is defective"). As the

22  ALJ must reassess Plaintiff's RFC on remand, she must also re-evaluate the findings at Step Five

23  to determine if Plaintiff can perform the jobs identified by the vocational expert in light of the

24

1  new RFC. *See Watson v. Asture*, 2010 WL 4269545, *5 (C.D. Cal. Oct. 22, 2010) (finding the

2  ALJ's RFC determination and hypothetical questions posed to the vocational expert defective

3  when the ALJ did not properly consider a doctor's findings).

4      **IV.     Whether the case should be remanded for an award of benefits.**

5      Plaintiff argues this case should be remanded for an award of benefits. Dkt. 11, pp. 18-19.

6  Defendant maintains the record raises serious doubts as to whether Plaintiff is disabled and an

7  award of benefits is therefore inappropriate. Dkt. 15, pp. 18-19.

8      The Court may remand a case "either for additional evidence and findings or to award

9  benefits." *Smolen*, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the

10  proper course, except in rare circumstances, is to remand to the agency for additional

11  investigation or explanation." *Benecke*, 379 F.3d at 595 (citations omitted). However, the Ninth

12  Circuit created a "test for determining when evidence should be credited and an immediate

13  award of benefits directed[.]" *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).

14  Specifically, benefits should be awarded where:

15      (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the
        claimant's] evidence, (2) there are no outstanding issues that must be resolved
16      before a determination of disability can be made, and (3) it is clear from the
        record that the ALJ would be required to find the claimant disabled were such
17      evidence credited.

18  *Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

19      The Court has determined the ALJ must re-evaluate Step Three, the medical opinion

20  evidence, and Plaintiff's symptom testimony and finds issues remain which must be resolved

21  concerning Plaintiff's functional capabilities and her ability to perform other jobs existing in

22  significant numbers in the national economy. Therefore, remand for further administrative

23  proceedings is appropriate.

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 17

1    The Court recognizes this case has twice been decided by ALJ Rosa and both decisions

2  have been reversed and remanded by this Court. ALJ Rosa has erred twice in her consideration

3  of Drs. Blackburn's and Lemberg's opinions. *See* AR 790-94. The Court recommends the

4  Commissioner assign this case to a different ALJ for all further proceedings. *See Rohan v.*

5  *Chater*, 98 F.3d 966, 971 (7th Cir. 1996) (recommending the Commissioner assign the case to a

6  different ALJ for all further proceedings);*Wentworth v. Barnhart*, 71 Fed. App'x. 727, 728 (9th

7  Cir. 2003) (finding the ALJ was biased and remanding to "the district court with directions to

8  remand to the Social Security Administration with instructions that the matter be assigned to a

9  different ALJ").

10                                              CONCLUSION

11   Based on the foregoing reasons, the Court hereby finds the ALJ improperly concluded

12  Plaintiff was not disabled and recommends the Commissioner assign this case to a different ALJ.

13  Accordingly, Defendant's decision to deny benefits is reversed and this matter is remanded for

14  further administrative proceedings in accordance with the findings contained herein.

15   Dated this 23rd day of November, 2016.

16

17   _____
     David W. Christel
18   United States Magistrate Judge

19

20

21

22

23

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 18